AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.   '22 MJ03681 |
| *or identify the person by name and address)* | ) | |
| Black iPhone | ) | |
| Seizure No. 2022250100049201-0002 | ) | |
| ("Target Device") | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Secs. 841, 846 | Possession with Intent and Conspiracy to Distribute a Controlled Substance |
| 21 USC Secs. 952, 960, 963 | Importation and Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See Attached Affidavit of HSI Special Agent Kyle Tannehill incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Kyle Tannehill
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:   ___10/07/2022___

_____
*Judge's signature*

City and state:  San Diego, California                Hon. Lupe Rodriguez, Jr., U.S. Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black iPhone

Seizure No. 2022250100049201-0002

(**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 22, 2022, up to and including September 22, 2022:

a.      tending to indicate efforts to import federally controlled substances from Mexico into the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of federally controlled substances from Mexico into the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in importation of narcotics, or some other federally controlled substance, from Mexico into the United States;

d.      tending to identify travel to or presence at locations involved in the importation of federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963.

**AFFIDAVIT**

I, Special Agent Kyle Tannehill, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Black iPhone
>
> Seizure No. 2022250100049201-0002
>
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically, violations of possession with intent to distribute, distribution of, and importation of a controlled substance, and conspiracies to do same, in violation of 21 U.S.C. §§ 841, 846, 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation of Shane Rummel MCCOY ("MCCOY") for his involvement in the crimes described above. **Target Device** is currently in the custody of Homeland Security Investigations (HSI) located at 880 Front Street, Suite 3200, San Diego, California 92101.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.      I have been employed as a Special Agent (SA) with Homeland Security Investigations (HSI) since December of 2020. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.      During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations (DTOs) involved in the importation and distribution of controlled substances into the United States from Mexico, including DTOs that import and

distribute controlled substances into and through the Southern District of California and further into the United States via the Central District of California. Prior to my employment as a Special Agent, I was employed as a California Peace Officer with the San Diego Harbor Police Department for approximately four and a half years. As a Peace Officer, I conducted multiple investigations for fraud, narcotics, and smuggling operations. I have been trained in Drug Awareness Recognition by the California Narcotics Officers Association as intermediate certification for narcotics related violations.

5.     I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats

and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.    On July 29, 2022, United States Magistrate Judge Barbara L. Major, Southern District of California signed an order allowing law enforcement officers to install and use a GPS tracking device on a white 2012 Ford Fusion bearing California license plate 6WBU675 ("the vehicle") registered to STOLECKI at 10395 Orozco Road, San Diego, California 92124 ("the Residence)" (see: 22MC1083).

//

8.      On September 14, 2022, United States Magistrate Judge Allison H. Goddard, Southern District of California signed an order allowing law enforcement officers to install and use a GPS tracking device on the vehicle (see: 22MC1320).

9.      On September 22, 2022, at approximately 6:49 A.M., HSI SAs observed STOLECKI outside the residence near the vehicle with male individual known to HSI and positively identified as Shane Rumel MCCOY ("MCCOY"). MCCOY watched STOLECKI depart in the vehicle.

10.     California Department of Motor Vehicles records checks show that both MCCOY and STOLECKI live at the residence.

11.     Using the authorized GPS tracking device, the vehicle is observed driving north on Interstate 15 (I-15) until approximately 7:10 A.M., when the tracker shows the vehicle stopped on the northbound I-15 and the Old Highway 395 exit, near Escondido, California.

12.     At about 7:10 A.M., Deputy Sheriff A. Sprague of the San Diego County Sheriff's Department (SDSD) was on patrol in a fully marked police vehicle and in full uniform, observed that the center brake light of the vehicle was defective in violation of California Vehicle Code (CVC) § 24252(a), and that the vehicle was travelling approximately 75 miles per hour in an area where the posted speed limit is 70 miles per hour in violation of CVC § 22350.

13.     At approximately 7:12 A.M., Deputy Sheriff Sprague conducted a traffic stop of the vehicle on I-15 near the Old Hwy 395 exit. STOLECKI was the driver and sole occupant of the vehicle. STOLECKI was able to provide a valid California driver's license but was unable to produce a valid registration card or proof of insurance. During the traffic stop, STOLECKI stated that she was going to work in Laguna Beach, California. Deputy Sheriff Sprague noticed that STOLECKI appeared flustered along with uncoordinated attempts to locate her insurance information, which based on her training and experience are signs of nervousness.

//

14.    At approximately 7:58 A.M., Border Patrol Agent (BPA) R. Ortero stopped to assist with the traffic stop. At approximately 8:00 A.M., BPA Ortero screened the vehicle with his assigned narcotics detection dog and received a positive canine alert to rear of the vehicle.

15.    At approximately 8:01 A.M., BPA Ortero opened the trunk of the vehicle and the canine alerted to the brown boxes located in the trunk. Deputy Sheriff P. Sterbenz opened the boxes and discovered a total of forty (40) plastic packages containing a white crystalline substance weighing approximately 37.6 kilograms (83.02 pounds), that later tested positive for methamphetamine, a Schedule II Controlled Substance.

16.    STOLECKI was placed under arrest and taken to the SDSD Santee Station.

17.    Based on STOLECKI's arrest, law enforcement officers assembled to secure the residence.

18.    Law enforcement sought and received a warrant to search the residence from the Honorable John M. Thompson, Superior Court of California, County of San Diego.

19.    At approximately 9:17 A.M., MCCOY exited the residence and was detained by law enforcement officers.

20.    MCCOY handed **Target Device** to law enforcement during his detention. Based on the federally controlled substances previously seized from a vehicle associated with MCCOY, the information gathered from a source of information's interview with HSI SAs, the prior observations of law enforcement officers of MCCOY placing boxes (similar in size and appearance to the boxes containing methamphetamine seized from STOLECKI on September 22, 2022) into the trunk of the vehicle, the undersigned believes that there is probable cause to believe that **Target Device** will contain evidence of MCCOY's involvement in trafficking a federally controlled substance.

21.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital

information are stored in the memory of the **Target Device**.  In light of the above facts and my experience and training, there is probable cause to believe that MCCOY's was using the **Target Device** to communicate with STOLECKI and others to further the trafficking of a federally controlled substance into and throughout the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as MCCOY, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on July 22, 2022, up to and including September 22, 2022.

### METHODOLOGY

22.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//
//
//

## CONCLUSION

26.     Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of MCCOY's violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.


I swear the foregoing is true and correct to the best of my knowledge and belief.


_____
Special Agent Kyle Tannehill
Homeland Security Investigations


Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 7th day of October, 2022.

                              10:41 a.m.
_____
Hon. Lupe Rodriguez, Jr.
United States Magistrate Judge